**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**SOUTHEASTERN DIVISION**

DAVID JAMES MILCENDEAU,              )
                                     )
        Plaintiff,                   )
                                     )
    v.                               )        Case No. 1:25-cv-00047-ACL
                                     )
CENTURION HEALTH SERVICES, et al.,   )
                                     )
        Defendants.                  )

**<u>MEMORANDUM AND ORDER</u>**

Self-represented prisoner-plaintiff David James Milcendeau brings this action under 42 U.S.C. § 1983 for deliberately indifferent medical care resulting in the amputation of his left leg below the knee.  Plaintiff has paid the full filing fee in this matter; however, because Plaintiff is a prisoner, his pleadings are subject to review under 28 U.S.C. § 1915A.  On October 1, 2025, based on such review, the Court directed Plaintiff to file an amended complaint in an attempt to cure his pleading deficiencies.  ECF No. 6.  After being granted an extension of time (ECF No. 8), Plaintiff filed the documents that are now before the Court: an Amended § 1983 Complaint (ECF No. 10) and a "28 U.S.C. § 1915A Brief" (ECF No. 11).

Based on a review of these documents under § 1915A, the Court will direct the Clerk of Court to issue process for service by Plaintiff on his Eighth Amendment claims of deliberately indifferent medical care against defendants John Smith and Centurion.  All other named defendants will be dismissed from this matter for failure to state a claim upon which relief may be granted under 28 U.S.C. § 1915A(b)(1).  Finally, the Court warns Plaintiff that he must complete service as instructed in this Order, within the time allowed by the Federal Rules, if he wishes to avoid dismissal of this matter.

**Legal Standard on Initial Review**

Plaintiff is a convicted and sentenced state prisoner at the Southeast Correctional Center (SECC), a Missouri Department of Corrections (MDOC) facility located in Charleston, Missouri. ECF Nos. 1 at 4; 10 at 2.  Plaintiff filed this 42 U.S.C. § 1983 action against multiple defendants associated with the healthcare provided to inmates at SECC.  ECF Nos. 1 at 4-6; 10 at 2-4. Although Plaintiff has paid the full filing fee in this matter, under 28 U.S.C. § 1915A, the Court is required to review a civil complaint "in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity."  28 U.S.C. § 1915A(a); *see also Lewis v. Estes*, No. 00-1304, 2000 WL 1673382, at *1 (8th Cir. Nov. 8, 2000) (citing *Rowe v. Shake*, 196 F.3d 778, 781 (7th Cir. 1999) (holding that the statutory language of 28 U.S.C. § 1915A applies to all prisoners, no matter their fee status, who bring suit against a governmental entity, officer, or employee)).

Under 28 U.S.C. § 1915A, the Court is required to review and dismiss a complaint filed by a prisoner in a civil action if it is frivolous or malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief.  28 U.S.C. § 1915A(b).  To state a claim for relief, a complaint must plead more than "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Id.* at 679.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.  Determining whether a complaint states a plausible claim for relief is a context-specific

task that requires the reviewing court to draw on its judicial experience and common sense. *Id.* at 679.

When reviewing a complaint filed by a self-represented person, the Court accepts the well-pleaded facts as true, *White v. Clark*, 750 F.2d 721, 722 (8th Cir. 1984), and it liberally construes the complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district court should construe the plaintiff's complaint in a way that permits the claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even self-represented plaintiffs are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980); *see also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (refusing to supply additional facts or to construct a legal theory for the self-represented plaintiff).

**Plaintiff's Amended Complaint**

In his Amended 42 U.S.C. § 1983 Complaint, Plaintiff names eight (8) defendants associated with the healthcare services at SECC: (1) Centurion of Missouri, LLC;[1] (2) Renae Morton (Centurion nurse practitioner);[2] (3) Dr. Sandra Zacaroff (Centurion doctor); (4) Melinda Sorbello (Centurion nurse practitioner); (5) Valancia Henderson (Centurion nurse practitioner);

---

[1] Plaintiff's original Complaint named this defendant as "Centurion Health Services." ECF No. 1 at 1. Starting November 15, 2021, Centurion Health became the medical services company contracted with the MDOC to provide statewide correctional healthcare – including medical and mental health services for incarcerated people at SECC. *See Centurion: Centurion Health Begins Correctional Health Contract for Missouri Department of Corrections*, https://teamcenturion.com/newsroom/centurion-health-begin-correctional-health-contract-for-missouri-department-of-corrections/ (last visited Apr. 7, 2026).

[2] This appears to be the same defendant named as "Renee Morton" in Plaintiff's original Complaint. ECF No. 1 at 1. The Clerk of Court will be directed to update the spelling of this defendant's name on the docket sheet.

- 3 -

(6) Brooklyn Townsend (Centurion nurse); (7) John Smith (Centurion employee); and (8) Dr. John Jones (non-Centurion surgeon).  ECF No. 10 at 1-4.

The allegations of the Amended Complaint are as follows.  Plaintiff is a diabetic.  He alleges that, starting in September of 2023, he sought medical treatment at SECC for "an infected left foot."  *Id.* at 3.  Over the subsequent twenty-one (21) months, Plaintiff asserts that defendant Centurion employees Morton, Sorbello, Henderson, and Townsend treated his foot infection, including providing wound care.  For approximately a year of this period, these Centurion defendants were supervised by defendant Dr. Zacaroff.  *Id.*  Plaintiff alleges that these Centurion employees "lacked the education, tra[i]ning, knowledge, experience, skill and expertise to correctly diagnose and/or provide appropriate treatment" for Plaintiff's infection, thereby denying him adequate medical care and causing "constant severe pain."  *Id.* at 3, 5.  Plaintiff further contends that the inadequate medical care provided by the Centurion defendants resulted in him having two (2) surgeries: "first a partial amputation of Plaintiff's left foot, then amputation of his left leg below the knee."  *Id.* at 5.

Plaintiff further explains that he was seen via telemed by a non-defendant medical doctor podiatrist in both March and May of 2024 "who determined [that] Plaintiff needed vascular surgery to restore the blood flow to [his] left foot."  However, according to Plaintiff, defendant John Smith, "an employee of Centurion endowed by Centurion with final decision-making authority, rejected said recommended vascular surgery wholly for the sake of Centurion's profitability."  *Id.*

Approximately a year later, in June 2025, Plaintiff had his first surgery with defendant Dr. John Jones, who amputated "the front half of Plaintiff's left foot."  Plaintiff alleges that Dr. Jones "failed to provide Plaintiff the standard of care by failing to send the excised margin to pathology to determine whether infection was present in the excised margin, and as a result of this failure …

- 4 -

caused Plaintiff to undergo a second surgery, made more radical by said substandard care." In October 2025, Plaintiff had the second surgery where his left leg was amputated just below the knee. *Id.*

In summary, Plaintiff alleges that he was denied adequate medical treatment including a denial of appropriate treatment (or "wound care") for his infected foot; a denial of vascular surgery; and a denial of medication (presumably, pain medication). As for injuries, Plaintiff alleges that he was in "[c]onstant severe pain from September 2023 through the present;" that he had to have two (2) "unnecessary and/or more radical" surgeries which resulted in the amputation of half his left foot and eventually his left leg below the knee; and he suffered "extreme mental anguish." *Id.*

In terms of relief, Plaintiff seeks over forty (40) million dollars in compensatory and punitive damages from the defendants "for denial of adequate medical treatment resulting in prolonged severe pain and suffering, … extreme mental anguish and emotional distress, … permanent disability" and "substandard medical treatment resulting in an unnecessary and/or more radical surgery." *Id.* at 6.

### Plaintiff's § 1915A Brief

Along with his Amended Complaint, Plaintiff filed a "28 U.S.C. § 1915A Brief." ECF No. 11. Plaintiff's stated purpose for the Brief is to address "various defenses the Court may assert" and he requests that the Court "allow his First Amended Complaint in toto to go forward." *Id.* at 1, 9 (emphasis in original).

First, in his Brief, Plaintiff discusses the requirement of exhaustion of the grievance process[3] under 42 U.S.C. § 1997e(a), and he states that he is still in the "process of exhausting

---

[3] Although not discussed in his Amended Complaint, Plaintiff attached grievance filing exhibits to his original Complaint. ECF No. 1 at 2-3. In assessing whether pleadings sufficiently state a valid claim for relief, courts may

additional grievances pertaining to subsequent developments." *Id.* at 1.  The Court notes that a prisoner is not required to plead and demonstrate exhaustion in his complaint. *Jones. v. Bock*, 549 U.S. 199, 212-16 (2007).

After this, Plaintiff discusses the liability of a business employer, such as Centurion, for the actions of its employees under a theory of respondeat superior. *Id.* at 1-3.  Plaintiff argues that the "Centurion employee who held the title of 'Medical Director'… approves or disapproves medical treatment proposed by on-site and outside physicians" and "[t]hus, Centurion, through its chosen employees, makes final decisions relative to medical care." *Id.* at 2-3.  So, "[i]f in doing the job an employee was hired to do the employee causes harm, it is only fitting to hold Centurion liable for that harm." *Id.* at 3.  Later in his brief, Plaintiff also discusses how a plaintiff can establish the liability of Centurion for a violation of the Eighth Amendment with "proof that either [Centurion] inflicted cruel and unusual punishment … or someone endowed with final decision-making authority used it to inflict cruel and unusual punishment." *Id.* at 8.  The Court notes that Plaintiff never directly ties these legal arguments to any named defendant in this case.

Next, Plaintiff discusses two Missouri statutes which pertain to the definition of a "health care provider" and the Missouri requirement of an affidavit of merit when a provider is sued for

---

consider materials that are attached as exhibits. *Reynolds v. Dormire*, 636 F.3d 976, 979 (8th Cir. 2011) (citations omitted); Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

According to these grievance exhibits, in May 2024, Plaintiff filed an offender grievance at SECC complaining that it took "too long" (three weeks) to receive a response to his health services request (HSR). *Id.* at 2.  Plaintiff asserts that his "provider was not happy" because "she should have seen [his] wound sooner."  Plaintiff further complains that it took seven months for him to receive a response to the IRR he filed at SECC on the same issue. *Id.*  The SECC institutional response to Plaintiff's grievance states that after he filed a HSR complaining that his "foot hurts," his HSR was "triaged" on "10/21/23," and Plaintiff was seen three weeks later on "11/14/2023." *Id.* at 3.  Apparently, the goal at SECC is to see patients within five days of HSR submission, but during staffing shortages, patients are "seen in nurse sick call by priority." *Id.*

substandard health care. *Id.* at 3-7 (citing Mo. Rev. Stat. §§ 538.205(6), 538.225). According to Plaintiff, the Missouri affidavit requirement is "displace[d]" by the Federal Rules of Civil Procedure. *Id.* at 6-7. Similarly, with citations to Missouri caselaw, Plaintiff discusses the determination as to whether a person is an employee or an independent contractor, arguing that "Centurion's on-site physicians are employees of Centurion." *Id.* at 7. The Court notes that to the extent Plaintiff is relying on Missouri state statutes and case law in support of his arguments and analysis of the facts of his case, these are not persuasive to this federal court as they hold no precedential value.

Furthermore, Plaintiff discusses the money-making objective of a business like Centurion:

For a business like Centurion, which gets paid a predetermined amount for doing a job, the less it spends on doing the job, the more money it makes. It is, therefore, in Centurion's best interest to spend as little as possible on doing the job. This objective is accomplished by reserving final decision-making authority, which makes everyone subject to that final decision-making authority an employee.

*Id.* at 7-8. Presumably, Plaintiff mentions this financial objective of Centurion to support the argument that defendant Centurion is liable to Plaintiff based on their policy of keeping spending at a minimum, at the cost of denying needed medical procedures to inmates, and that a Centurion employee's decision to save money and deny a medical procedure results in liability for Centurion.

Finally, again with citations to Missouri law, Plaintiff argues that he is a "third-party beneficiary" of the contract between Centurion and MDOC to provide medical care to Missouri inmates. *Id.* at 9. However, as stated above, Missouri law is not relevant to this Court on these claims brought under a federal statute.

## Discussion

After careful review and liberal construction of the allegations of Plaintiff's pleadings, the Court finds that Plaintiff has stated an Eighth Amendment deliberate indifference claim against

defendant John Smith, in his individual capacity, and against defendant Centurion. The Court will direct the Clerk of Court to issue summons to Plaintiff for execution of service on these defendants.[4] However, for the reasons discussed below, Plaintiff's claims against the other six (6) defendants (Renae Morton, Dr. Sandra Zacaroff, Melinda Sorbello, Valancia Henderson, Brooklyn Townsend, and Dr. John Jones) will be dismissed for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915A(b)(1).

## I.   Deliberately Indifferent Medical Care

Plaintiff brings this action pursuant to 42 U.S.C. § 1983, which was designed to provide a "broad remedy for violations of federally protected civil rights." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 685 (1978). One such federally protected right is the Eighth Amendment's prohibition on cruel and unusual punishment, which protects prisoners from deliberate indifference to serious medical needs. *Luckert v. Dodge Cnty.*, 684 F.3d 808, 817 (8th Cir. 2012). To prevail on a deliberate indifference claim, a prisoner plaintiff must demonstrate that he suffered from an objectively serious medical need, and that defendants actually knew of and disregarded that need. *Roberts v. Kopel*, 917 F.3d 1039, 1042 (8th Cir. 2019); *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997). A "serious medical need" is "one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Holden v. Hirner*, 663 F.3d 336, 342 (8th Cir. 2011) (quoted case omitted).

"[D]eliberate indifference requires a highly culpable state of mind approaching actual intent." *Kulkay v. Roy*, 847 F.3d 637, 643 (8th Cir. 2017) (quoted case omitted). An inmate must

---

[4] Because Plaintiff paid the full filing fee in this matter and he is not proceeding *in forma pauperis*, he is responsible for serving process on the defendants. The Court has included service instructions for Plaintiff below.

demonstrate that a prison health care provider's actions were "so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care." *Jackson v. Buckman*, 756 F.3d 1060, 1066 (8th Cir. 2014) (quoted case omitted).   Allegations of mere negligence in giving or failing to supply medical treatment will not suffice.  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Nor will a prisoner's "mere disagreement with treatment decisions" support a claim of deliberate indifference.  *Jones v. Minn. Dep't of Corr.*, 512 F.3d 478, 482 (8th Cir. 2008).

Deliberate indifference may also be demonstrated by prison officials who intentionally deny or delay access to medical care.  *Estelle*, 429 U.S. at 104-05.  When a delay in treatment is alleged to have violated an inmate's constitutional rights, a court measures the objective severity of the deprivation "by reference to the *effect* of the delay in treatment."  *Jackson v. Riebold*, 815 F.3d 1114, 1119 (8th Cir. 2016) (internal quotation marks omitted) (quoting *Laughlin v. Schriro*, 430 F.3d 927, 929 (8th Cir. 2005)).  To support a claim based on a delay in treatment, a plaintiff must present "verifying medical evidence" showing that the delay in treatment had detrimental effects.  *Id.* at 1119-20*; see also Holden*, 663 F.3d at 342 ("[a] prisoner alleging a delay in treatment must present verifying medical evidence that . . . [the] delays adversely affected his prognosis.").

## II.    Defendant Centurion

To state a claim against defendant Centurion, Plaintiff must allege that a policy or custom of Centurion inflicted injury actionable under § 1983.  *Sanders v. Sears, Roebuck & Co.*, 984 F.2d 972, 975-76 (8th Cir. 1993) (citing *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 690-91 (1978)). Furthermore, Plaintiff must establish the liability of Centurion itself for the alleged conduct.  *See Marsh v. Phelps Cnty.*, 902 F.3d 745, 751 (8th Cir. 2018); *Kelly*, 813 F.3d at 1075.  In order to demonstrate such liability, Plaintiff must show that a constitutional violation resulted from (1) an

official policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise. *See Mick v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018).

Centurion is the contracted healthcare provider for inmates at SECC. In this case, Plaintiff alleges that Centurion has a policy or custom of cost-savings measures that have delayed and/or denied him access to adequate medical care, resulting in partial amputation of his left foot and permanent disability. Specifically, Plaintiff asserts that he was denied a doctor-recommended vascular surgery on his foot to locate a blockage and restore blood flow, "wholly for the sake of Centurion's profitability." ECF No. 10 at 5. Presumably, the restoration of blood flow in the foot would have prevented the later partial amputation surgery.

At this point, the Court cannot say beyond doubt that Plaintiff will be unable to prove any set of facts in support of his claim which would entitle him to relief. As such, dismissal on initial review is not appropriate. *See Burke v. North Dakota Dep't of Corr. and Rehab.*, 294 F.3d 1043, 1044 (8th Cir. 2002) (per curiam) (finding that, for purposes of § 1915, a prisoner stated a claim against a corporate medical services provider for a state department of corrections when the prisoner alleged, in relevant part, that the provider's "treatment protocol . . . [was] damaging his health in violation of his Eighth Amendment rights"). Liberally construing Plaintiff's factual allegations, as required for purposes of initial review under § 1915A(b)(1), the Court finds that Plaintiff has stated a sufficient claim under the Eighth Amendment to survive initial review against defendant Centurion. The Court will direct the Clerk to issue process to Plaintiff for service on defendant Centurion.

### III.   Defendant John Smith

After approximately six (6) to eight (8) months of treatment for his foot infection, Plaintiff saw a non-defendant medical doctor podiatrist on two occasions who determined that Plaintiff

needed vascular surgery to restore blood flow to his left foot. Despite this recommendation from the podiatrist specialist, John Smith—"an employee of Centurion endowed by Centurion with final decision-making authority—denied Plaintiff the surgery.[5] ECF No. 10 at 5.

Plaintiff's foot infection constituted an objectively serious medical need—it had required months of treatment at SECC and referral to an outside specialist who determined surgery was needed. John Smith knew about Plaintiff's serious medical need and the surgery recommendation, and he made the decision to deny the surgery. Liberally construing the allegations of Plaintiff's pleadings, this denial of surgery to restore blood flow to Plaintiff's foot resulted in "constant pain" and the eventual partial amputation of his foot. Clearly this delay in treatment had a physically detrimental effect on Plaintiff. *See Jackson*, 815 F.3d at 1119-20.

As such, accepting Plaintiff's allegations as true for purposes of initial review under § 1915A(b)(1), Plaintiff has sufficiently alleged that John Smith was personally involved in, and directly responsible for, his medical care. John Smith knew of, and deliberately disregarded, the telemed podiatrist's recommendation for a vascular surgery to restore blood flow to Plaintiff's foot. Plaintiff further alleges that Smith's decision to deny the surgery caused the detrimental effects of constant pain, partial amputation, and permanent disability. Although it is not entirely clear from the pleadings whether Plaintiff is asserting an Eighth Amendment claim against John Smith based on a misadministration of prescribed medical care or based on a delay in needed medical care, or both, "[w]hen an official denies a person treatment that has been ordered … constitutional liability may follow." *Presson v. Reed*, 65 F.4th 357, 367 (8th Cir. 2023) (discussing

---

[5] Although never explicitly stated by Plaintiff—liberally construing Plaintiff's pleadings—it appears that John Smith is the Centurion 'Medical Director' referred to by Plaintiff in the arguments in his 1915A Brief, who is empowered with "final decision-making authority" regarding medical treatments proposed by outside physicians for SECC employees. *See* ECF No. 11 at 2-3, 8.

how a person can manifest deliberate indifference by intentionally delaying or denying access to medical care "or *intentionally interfering with treatment or medication that has been prescribed.*" (emphasis in original)) (citation omitted).

The Court finds that Plaintiff has stated enough at this initial stage for the Court to order that process issue on his Eighth Amendment claim of deliberately indifferent medical care against John Smith.  The Court will direct the Clerk to issue process to Plaintiff for service on defendant John Smith.

**IV.   Defendants Renae Morton, Dr. Sandra Zacaroff, Melinda Sorbello, Valancia Henderson, and Brooklyn Townsend**

Plaintiff further asserts that five (5) Centurion-employed defendants (Morton, Zacaroff, Sorbello, Henderson, and Townsend) also acted with deliberate indifference to his serious medical needs.  According to Plaintiff, nurse practitioners Morton, Sorbello, and Henderson, along with wound care nurse Townsend, provided him with medical care for his infected foot over a twenty-one (21) month period, starting in September 2023.  Plaintiff alleges that the care these defendants provided was inadequate because they "lacked the education, training, knowledge, experience, skill and expertise to correctly diagnose and/or provide appropriate treatment."  ECF No. 10 at 3. Plaintiff claims that this inadequate care caused "constant severe pain" and ultimately led to two (2) amputation surgeries.  *Id.* at 5.  Furthermore, for twelve (12) months of this twenty-one (21) month period, Plaintiff asserts that Dr. Zacaroff supervised the other four (4) Centurion employees, as the on-site physician at SECC.  *Id.* at 3.

**a.  Nurse and Nurse Practitioner Defendants**

As to defendants Morton, Sorbello, and Henderson, and Townsend who allegedly provided inadequate medical care for Plaintiff's infected foot, the factual assertions against them are not

enough to state a claim of deliberately indifferent medical care.  In order to meet the subjective component required for a deliberate indifference claim, Plaintiff must provide facts indicating that the defendants intentionally disregarded his medical need.  *Roberts*, 917 F.3d at 1042.  Because "deliberate indifference requires a highly culpable state of mind approaching actual intent," Plaintiff must demonstrate that defendants' actions were "so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care." *Kulkay*, 847 F.3d at 643; *Jackson*, 756 F.3d at 1066.

Plaintiff has not met that legal standard here.  Plaintiff alleges that these defendants lacked the education, training, knowledge, experience, skill, and expertise to provide adequate care.  He does not allege that they intentionally treated him inappropriately or that they refused to provide him with care.  Similarly, Plaintiff does not assert that any of these defendants denied him pain medication, he only alleges that what was provided was insufficient.  As such, Plaintiff's allegations against these defendants amount to negligence, and that is not enough to state a claim of deliberate indifference.  *See Estelle*, 429 U.S. at 106.

### b.  SECC On-Site Physician Defendant

Finally, as to defendant Dr. Sandra Zacaroff, Plaintiff does not allege that Dr. Zacaroff personally provided him with medical care, only that Dr. Zacaroff was responsible for the other Centurion-employees who provided care.  "A supervisor may not be held liable under § 1983 for the constitutional violations of a subordinate on a respondeat superior theory." *Tlamka v. Serrell*, 244 F.3d 628, 635 (8th Cir. 2001) (*citing Boyd v. Knox*, 47 F.3d 966, 968 (8th Cir. 1995)).  "Liability under § 1983 requires a causal link to, and direct responsibility for, the deprivation of rights." *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990).  To be cognizable under § 1983, a claim must allege that the defendant was personally involved in or directly responsible for

the incidents that deprived the plaintiff of his constitutional rights. *Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir. 1985).

A plaintiff may, under a theory of direct liability, maintain a civil rights claim against a prison official whose failure to train, supervise, direct, or control actions of a subordinate is such that it constitutes deliberate indifference to plaintiff's serious medical needs. *Moyers v. Buescher*, 806 F. Supp. 218, 220 (E.D. Mo. 1992). "[A] supervisor's liability arises if: 'he directly participates in a constitutional violation or if a failure to properly supervise and train the offending employee caused a deprivation of constitutional rights.' " *Tlamka*, 244 F.3d at 635 (*quoting Andrews v. Fowler*, 98 F.3d 1069, 1078 (8th Cir. 1996) (citations omitted)); *see also Otey v. Marshall*, 121 F.3d 1150, 1155 (8th Cir. 1997).

Because the Court found above that Plaintiff's pleadings fail to state a constitutional claim against the named defendants that Dr. Zacaroff was supervising (Morton, Sorbello, Henderson, and Townsend), Plaintiff's claim for direct liability against Dr. Zacaroff also fails. Any alleged failure to supervise or train by Dr. Zacaroff did not cause a deprivation of Plaintiff's constitutional rights.

For all these reasons, Plaintiff fails to state a § 1983 claim against defendants Renae Morton,[6] Dr. Sandra Zacaroff, Melinda Sorbello, Valancia Henderson, and Brooklyn Townsend.

---

[6] Plaintiff also names defendant Renae Morton in her official capacity in the Amended Complaint. *See* ECF No. 10 at 3. However, this claim is duplicative of the claim Plaintiff asserts against defendant Centurion. In an official capacity claim against an individual, the claim is actually "against the governmental entity itself." *White v. Jackson*, 865 F.3d 1064, 1075 (8th Cir. 2017). Naming a government official in his or her official capacity is the equivalent of naming the government entity that employs the official. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). Because Renae Morton is employed by defendant Centurion, Plaintiff's official capacity claim against Morton is actually a claim against Centurion.

"It is proper for a court to dismiss a claim against a government officer in his official capacity as duplicative or redundant if the claims are also asserted against the officer's governmental employer." *Caruso v. City of St. Louis*, 2016 WL 6563472, at *1 (E.D. Mo. Nov. 4, 2016) (citing *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010); *Bonenberger v. City of St. Louis*, 2016 WL 5341113, at *2 (E.D. Mo. Sept. 23, 2016) (citing cases in

These defendants will be dismissed for failure to state a claim upon which relief may be granted. 28 U.S.C. § 1915A(b)(1).

## V.      Defendant Dr. John Jones

Finally, Plaintiff alleges that defendant Dr. John Jones amputated half of his left foot in June 2025 and that he failed "to send the excised margin to pathology to determine whether infection was present." "[A]s a result of this failure to provide the standard of care[, Dr. Jones] caused Plaintiff to undergo a second surgery" amputating his left leg below the knee in October 2025. ECF No. 10 at 5.

Plaintiff here does not assert that Dr. Jones *intentionally* failed to check the excised margin for infection, he only alleges that he failed to meet the standard of care. These allegations amount to negligence or medical malpractice and cannot be brought in a § 1983 action. "[D]eliberate indifference requires a highly culpable state of mind approaching actual intent." *Kulkay*, 847 F.3d at 643. As such, mere negligence or inadvertence does not rise to the level of deliberate indifference. *Id.*; *see also Popoalii v. Corr. Med. Servs.*, 512 F.3d 488, 499 (8th Cir. 2008) (stating that medical malpractice is not actionable under the Eighth Amendment).

In addition, the alleged failure in pathology testing following Plaintiff's first surgery is the only asserted cause for Plaintiff's second (and more extensive) surgery. None of Plaintiff's factual assertions against the other named defendants allege that a failure to provide specific treatment (during the four (4) month period between surgeries) caused the need for the second surgery. As such, these allegations appear improperly joined in this case. *See* Fed. R. Civ. P. 20(a)(2).

---

support of dismissing duplicative or redundant official capacity claims against an individual when the claim is also asserted against the individual's employer)). Because Centurion was also named as a defendant here, the official capacity claim against defendant Renae Morton is subject to dismissal. As a result, all claims against Morton—both in her individual and official capacities—will be dismissed.

Even self-represented litigants are obligated to abide by the Federal Rules. *McNeil v. United States*, 508 U.S. 106, 113 (1993). Plaintiff's medical malpractice claim must be brought in a separate suit, not under 42 U.S.C. § 1983. For these reasons, Dr. John Jones will be dismissed from this suit for failure to state a § 1983 claim upon which relief may be granted. 28 U.S.C. § 1915A(b)(1).

### Directions for Service by Plaintiff

Because Plaintiff paid the full filing fee, neither the Court nor the United States Marshal Service performs service of process. Plaintiff is responsible for serving defendants John Smith and Centurion[7] pursuant to Rule 4 of the Federal Rules of Civil Procedure. Plaintiff has **<u>two options</u>** for conducting service of process.

First, Plaintiff may serve defendants with a summons. To do so, Plaintiff must submit to the Court: (1) a completed summons form and (2) a completed "Notice of Intent to Use Private Process Server" form. The Notice-of-Intent form must include the name and address of the process server who will be effectuating service upon the defendants. Plaintiff must complete these forms and return them to the Clerk's Office. Once Plaintiff properly submits these forms, the Clerk's Office will sign and seal his summons and return it to him. The summons, along with a file-stamped copy of the Amended Complaint, must then be served upon the defendants by the private process server. After the private process server has done so, Plaintiff must file a return of service with the Court. The Court will direct the Clerk of Court to send Plaintiff the forms to conduct service in this manner.

---

[7] The Court notes for Plaintiff's reference that, according to the Missouri Secretary of State's Business Filing database, the registered agent for service on Centurion of Missouri, LLC is C T Corporation System, 5661 Telegraph Rd Ste 4B, Saint Louis, Missouri 63129-4275.

Second, Plaintiff may elect to serve defendants with a "Waiver of Service" form pursuant to Federal Rule of Civil Procedure 4(d).  If Plaintiff chooses this option, he must fill out a Waiver-of-Service form and send the form, a copy of the Amended Complaint, and a self-addressed and stamped envelope to the defendants.  If Plaintiff chooses to serve the defendants by waiver, he must file a notice informing the Court of his intention to serve the defendants in this manner.  Additionally, if the defendants sign a copy of the waiver and return it to Plaintiff, then Plaintiff must file his copy of the signed waiver with the Court.  If the defendants choose not to waive service, Plaintiff will need to use a private process server, as described above.  The Court directs the Clerk of Court to send Plaintiff a copy of the Waiver-of-Service form.

**Conclusion**

Upon initial review under 28 U.S.C. § 1915A, the Court finds that Plaintiff's Amended Complaint sufficiently states a claim of deliberately indifferent medical care under the Eighth Amendment against defendant John Smith, in his individual capacity, and against defendant Centurion.  As a result, the Court will order that the Clerk send Plaintiff the proper forms to initiate service on these defendants.  The other six (6) defendants—Renae Morton, Dr. Sandra Zacaroff, Melinda Sorbello, Valancia Henderson, Brooklyn Townsend, and Dr. John Jones—will be dismissed for failure to state a claim upon which relief may be granted.  *See* 28 U.S.C. § 1915A(b)(1).

Accordingly,

**IT IS HEREBY ORDERED** that the Clerk of Court shall change the docket sheet spelling of defendant "Renee Morton" to "Renae Morton."

**IT IS FURTHER ORDERED** that the Clerk shall not issue process or cause process to issue upon the Amended Complaint as to defendants Renae Morton, Dr. Sandra Zacaroff, Melinda

Sorbello, Valancia Henderson, Brooklyn Townsend, and Dr. John Jones because as to these defendants, the Amended Complaint fails to state a claim upon which relief can be granted. *See* 28 U.S.C. § 1915A(b)(1).  Plaintiff's claims against defendants Renae Morton, Dr. Sandra Zacaroff, Melinda Sorbello, Valancia Henderson, Brooklyn Townsend, and Dr. John Jones are **DISMISSED without prejudice**.

**IT IS FURTHER ORDERED** that Plaintiff shall effectuate service upon defendant John Smith, in his individual capacity, and defendant Centurion, on his claims of deliberate indifference under the Eighth Amendment, no later than **ninety (90) days** from the date of this Order.  In the absence of good cause shown, failure to timely serve said defendants shall result in the dismissal of Plaintiff's claims as to said defendants without prejudice.

**IT IS FINALLY ORDERED** that the Clerk of Court shall forward to Plaintiff with a copy of this Order: (1) a file-stamped copy of the Amended Complaint; (2) a summons form; (3) a "Notice of Intent to Use Private Process Server" form; and (4) a "Waiver of Service" form.

An Order of Partial Dismissal will accompany this Memorandum and Order.

Dated this 4th day of May, 2026.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

- 18 -